**STATE OFFICE OF RISK MANAGEMENT,**
Appellant

v.

**Mary LAWTON, Appellee.**

No. 10–07–00072–CV.

Court of Appeals of Texas,
Waco.

April 16, 2008.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This is an appeal from a summary judgment, wherein the trial court found that the State Office of Risk Management (SORM) had waived its right to contest the compensability of an injury sustained by Mary Lawton while in the course and scope of her employment with the Texas Department of Criminal Justice.[1] In one issue, SORM contends that it did not waive its right to contest the extent of Lawton's injury under section 409.021 of the Labor Code. We affirm.

## FACTUAL BACKGROUND

Lawton was injured and diagnosed with a knee contusion on July 5. On July 6, SORM received notice of this injury and subsequently began paying benefits. On July 25, Dr. Mario Bertoni issued an MRI report concluding that Lawton suffers from additional conditions:

> There is an approximately 2.0 cm area of increased bone marrow signal in the medial condyle of the femur, with focal central area of chondral and subchondral erosive cystic changes, in keeping with osteochondritis dissecans. Erosive changes of the cartilage, chondral, and subchondral region, indicative of severe chondromalacia, are also present in the lateral facet of the patella and medial condyle of the femur and lateral condyle of the tibia.

SORM received this report on August 1. On November 29, Dr. J. William Wellborn issued a peer review report concluding that these additional conditions are

Laura B. Fountain, Asst. Atty. Gen., Austin, for Appellant.

Stuart F. Lewis, Law Office of Stuart F. Lewis, Bryan, for Appellee.

---

1. The State is self-insured with respect to its employees' compensable injuries. *See* TEX. LAB.CODE ANN. § 412.0122 (Vernon 2006).

"changes of degenerative joint disease, a disease of life, and not part of the compensable work injury," *i.e.*, the knee contusion. On December 7, SORM issued a notice of disputed issue(s) and refusal to pay benefits.

After a hearing, the Division of Worker's Compensation (DWC) found that: (1) Lawton's conditions "arose out of or naturally flowed from the compensable left knee contusion injury;" (2) SORM, "through a reasonable investigation," could have determined within the sixty days after receiving notice of Lawton's injury that her conditions were "part of the compensable left contusion injury;" (3) Lawton's "compensable left knee contusion injury" extends to and includes these conditions; and (4) SORM waived the right to contest compensability by failing to timely do so in accordance with sections 409.021 and 409.022 of the Labor Code. The appeals panel affirmed the DWC's ruling.

SORM filed suit in the district court for judicial review of the appeals panel's decision. Lawton filed a motion for partial summary judgment, alleging that SORM waived its right to contest compensability under section 409.021 of the Labor Code. SORM filed a motion for partial summary judgment arguing that waiver did not occur because it was contesting extent of injury, not compensability; thus, the waiver provision of section 409.021 did not apply. The trial court granted Lawton's motion and dismissed the case.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire &*

*Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007) (per curiam) (citing *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire,* 236 S.W.3d at 756 (citing *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (per curiam); *Spates,* 186 S.W.3d at 568).

■ When, as here, competing motions for summary judgment are filed and one is granted and one denied, the appellate court should determine all questions presented and should render the judgment the trial court should have rendered. *Tex. Workers Comp. Commn. v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex. 2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.,* 166 S.W.3d 885, 887 (Tex.App.-Waco 2005, pet. denied).

## ANALYSIS

Section 409.021 provides that an insurance carrier who does not contest the compensability of an injury on or before the 60th day after the date on which the carrier is notified of the injury, waives its right to contest compensability. TEX. LAB.CODE ANN. § 409.021(c) (Vernon 2006). A "compensable injury" "arises out of and in the course and scope of employment for which compensation is payable." TEX. LAB.CODE ANN. § 401.011(10) (Vernon Supp. 2007). An "injury" constitutes "damage or harm to the physical structure of the body," a "disease or infection naturally resulting from the damage or harm," or "an occupational disease." TEX. LAB.CODE ANN. § 401.011(26) (Vernon Supp. 2007).

In reliance on our decision in *TIG Premier Insurance Co. v. Pemberton,* 127 S.W.3d 270 (Tex.App.-Waco 2003, pet. de-

nied), SORM argues that section 409.021 applies to compensability disputes, not extent of injury. In *Pemberton,* the claimant fell and injured his right shoulder and left knee while in the course and scope of his employment. *See id.* at 271. TIG, the insurance carrier, did not contest compensability. *Id.* Three months later, Pemberton was diagnosed with deep vein thrombosis (DVT) in his right leg. *Id.* Two years later, when the parties could not agree on Pemberton's impairment rating, the Texas Workers' Compensation Commission (TWCC) designated Dr. Leslie Bishop to conduct an impairment-rating examination. *Id.* Bishop assessed a tenpercent impairment rating, two percent of which was for the DVT. *Id.* Six months after receiving notice of Bishop's findings, TIG filed a dispute complaining that the DVT resulted from three prior surgeries combined with prolonged convalescence after the fall and was not compensable. *Id.* at 271–72. TIG argued that the sixty-day period in section 409.021 was inapplicable because it "pertains only to whether the carrier disputes the overall injury after initially learning of an employee's claim, and not to disputes which arise later about the extent or specific aspect of the injury." *Id.* at 272. After a hearing, the TWCC determined that TIG waived any complaint by not contesting the DVT within sixty days of learning of Bishop's findings. *Id.* The appeals panel and the trial court affirmed this finding. *Id.*

We determined that, "by its express wording and also by its context, section 409.021 pertains only to the overall injury," the "initial response by the carrier after receiving notice that an employee has been injured," and "the initiation of benefits." Id. at 274. We noted that "other workers

compensation statutes allow for contesting individual claims or parts of the overall claim without regard to the sixty-day restriction." *Id.* (citing TEX. LAB.CODE ANN. § 408.027 (Vernon Supp. 2007), TEX. LAB. CODE ANN. 408.125 (Vernon 2006), and TEX. LAB.CODE ANN. 410.001–.308 (Vernon 2006 & Supp. 2007)). Moreover, section 124.3 of the Administrative Code specifically provides that section 409.021 "does not apply to disputes of *extent of injury.*" *Id.* at 275 (quoting 28 TEX. ADMIN. CODE § 124.3(c) (Tex. Dep't of Ins., Div. of Worker's Comp., Investigation of an Injury and Notice of Denial/Dispute)) (emphasis added).[2] Accordingly, we held that "TIG was not bound by the sixty-day rule in contesting the inclusion of the DVT in Pemberton's impairment rating;" the trial court erred by determining otherwise. *Id.*

Lawton distinguishes *Pemberton* on grounds that: (1) Pemberton's additional condition was separate from the initial injury because it was associated with a different part of his body, while Lawton's additional conditions are associated with her left knee, the same part of her body as the initial injury; and (2) Pemberton's additional condition was diagnosed after the sixty-day time period, while Bertoni diagnosed Lawton's additional conditions within the sixty-day time period.

■ Lawton's argument that, unlike *Pemberton,* her additional conditions are associated with the same body part is not dispositive. The preamble to the proposed version of section 124.3 states:

> Subsection (c) addresses the situation where a carrier questions the extent of an employee's injury. For example, an employee may have injured his arm and then several months later the doctor

**2.** Subsection (c) of section 124.3 has been redesignated as subsection (e). *See* 29 TEX. REG. 2322, 2328 (2004) (amended to be codified at

28 TEX. ADMIN. CODE § 124.3) (Tex. Worker's Comp. Comm'n).

begins to treat the shoulder as well and the carrier does not believe that the shoulder is part of the compensable injury ...

Previously the rules were virtually silent on the issue of how to dispute extent of injury. This has led to numerous problems within the system. In the absence of guidance on this issue, the appeals panel has attempted to provide some structure to this issue. One appeals panel approach has suggested that when a doctor attempts to treat additional body parts/systems, such as in the previous example, Texas Labor Code, § 409.021 (regarding Initiation of Benefits; Insurance Carrier's Refusal; Administrative Violation) is invoked and the carrier has 60 days to file a dispute for extent of injury or waive the right to dispute this issue and become liable for this body part/system. *This rule does not adopt that interpretation.*

Texas Labor Code, § 409.021, is intended to apply to the compensability of the injury itself or the carrier's liability for the claim as a whole, *not individual aspects of the claim. When a carrier disputes the extent of an injury, it is not denying the compensability of the claim as a whole, it is disputing an aspect of the claim.* This is similar to when a carrier accepts a claim but disputes the existence of disability. A dispute of disability is a dispute of the amount of benefits that a person is entitled to. In much the same way, *a dispute involving extent of injury is a dispute over the amount or type of benefits, specifically, medical benefits, to which the employee is entitled (i.e. what body areas/systems, injuries, conditions, or symptoms for which the employee is entitled to treatment); it is not a denial of the employee's entitlement to benefits in general.*

25 TEX. REG. 2096, 2102 (2000) (to be codified at 28 TEX. ADMIN. CODE § 124.3) (Tex. Worker's Comp. Comm'n) (amended 2004) (emphasis added). Thus, section 409.021(c) does not apply to extent-of-injury disputes. *See id.*

■ According to SORM's notice of disputed issue(s) and refusal to pay benefits:

We are disputing entitlement of indemnity and medical benefits as related to degenerative changes in the knee including chondromalacia patella, chondral and subchondral erosive changes, and OCD with severe chondromalacia because: these disease are ordinary diseases of life and are not a result of the contusion that was reported as the compensable work injury. According to a peer review, the injured worker at most sustained a contusion and that this contusion did not aggravate the pre-existing condition of the degenerative joint disease.

SORM's dispute is not a denial of Lawton's entitlement to benefits in general or a dispute as to the overall injury, but is a dispute as to the type of benefits to which Lawton is entitled, specifically the conditions for which she is entitled to treatment. Pursuant to *Pemberton* and section 124.3, SORM's complaint falls within the scope of an extent of injury dispute. *See Pemberton,* 127 S.W.3d at 274–75; *see also* TEX. LAB.CODE ANN. § 409.021(c); 28 TEX. ADMIN. CODE § 124.3; 25 TEX. REG. 2096, 2102.

■ However, the Texas Worker's Compensation Commission appeals panel has held that "the nature of the injury will be defined by that information that could have been reasonably discovered in the carrier's investigation prior to the expiration of the waiver period."[3] *See Tex.*

---

3. "[A]n administrative agency has the power to interpret its own rules, and its interpreta-

*Workers' Comp. Comm'n,* Appeal No. 041738–s, 2004 TX Wrk. Comp. Lexis 1593, at *6 (Sept. 8, 2004). SORM argues that this ruling conflicts with section 409.021 and section 124.3's rejection of waiver for new disputes arising after the sixty-day period and so amounts to ad hoc rule making. We disagree. Sections 124.3 and 409.021 both provide for disputes raised outside the sixty-day period, where the carrier establishes the existence of information that could not have been reasonably discovered within the applicable time period. *See* 28 TEX. ADMIN. CODE § 124.3(a)(3); *see also* TEX. LAB.CODE ANN. § 409.021(d) (Vernon 2006).

Moreover, section 124.3 contemplates a situation where, after the initial injury and expiration of the sixty-day period, a new dispute arises with regard to a body part, system, injury, condition, or symptom. *See* 25 TEX. REG. 2096, 2102; *see also Pemberton,* 127 S.W.3d at 271 (information regarding additional conditions was not available until after sixty-day period expired); *see also Tex. Workers' Comp. Comm'n,* Appeal No. 051017, 2005 TX Wrk. Comp. Lexis 132, at *8 (June 22, 2005) (same). In such a situation, no waiver occurs under section 124.3. *See* 25 TEX. REG. 2096. Here, however, SORM received notice of Bertoni's findings well within the sixty-day period.

Given that Wellborn did not issue his peer review report until after the sixty-day period had expired, SORM contends that it could not dispute the extent of Lawton's injury within the sixty days because: (1) it could not determine whether the additional conditions were related to the compensable injury; and (2) it had no report on which to base such a dispute. However, Bertoni's report put SORM on notice that Law-

ton was seeking benefits for something more than a contusion and placed SORM in a position to dispute the extent of Lawton's injury.

Finally, SORM argues that requiring a carrier to "pay costly claims for 'waived' extensions of compensable injuries" defeats the purpose of the Labor Code because "it would dramatically increase the cost of workers' compensation insurance to employers and could provide unjust enrichment to the injured worker who could be paid benefits for an otherwise noncompensable condition." (citing SENATE BILL ANALYSIS, Tex. S.B. 1, 71st Leg., 2nd C.S. (1989) ("[t]his reform of the workers compensation system to provide a more understandable and reasonable mechanism for compensating injured workers is intended to bring Texas a more fair, just, and equitable workers compensation system in terms of costs to employers and benefits to injured employees.")). Yet, to allow a carrier to dispute the extent of an injury of which it had notice within the sixty-day period would obviate the purpose of chapter 409 to provide a streamlined process for workers' compensation claims in order to promote "prompt response[s]" to claims, "avoid early attorney involvement," and prevent delays that result in "hardship upon the employee." *Cont' l Cas. Co. v. Downs,* 81 S.W.3d 803, 806 (Tex.2002) (quoting 1 MONTFORD ET AL., A GUIDE TO TEXAS WORKERS' COMP REFORM 5–52 (1991)).

Accordingly, Lawton established her entitlement to judgment as a matter of law on the issue of waiver. We overrule SORM's sole issue and affirm the trial court's judgment.

Chief Justice Gray dissents but a separate opinion will not issue. He notes, how-

---

tion is entitled to great weight and deference" and is controlling unless "plainly erroneous or inconsistent." *Contl Cas. Co. v. Rivera,*

124 S.W.3d 705, 710 (Tex.App.-Austin 2003, pet. denied).

ever, this opinion appears to be the first opinion in which the appeals panel rule has been used to modify the Commission's duly adopted rule regarding the scope of waiver of compensability versus a waiver of the right to contest the extent of the compensable injury. This is an issue of significance to the State because of the frequency with which it is likely to be repeated, if not corrected or clarified. So that all workers compensation carriers are put on notice of the need to hire sufficient additional doctors to conduct peer reviews by the deadline or have their ability to contest the extent of injury waived, I would designate it an Opinion. Tex.R.App. P. 47.2; Tex.R.App. P. 47.4.